IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT R. WARNICK, SR.,           )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )     Civil Action No. 10-1704
                                  )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
            Defendant.            )

O R D E R

AND NOW, this 6th day of March, 2012, upon consideration of
Defendant's Motion for Summary Judgment (document No. 10) filed in the
above-captioned matter on June 21, 2011,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary
Judgment (document No. 12) filed in the above-captioned matter on June
21, 2011,

IT IS HEREBY ORDERED that said Motion is GRANTED. Specifically,
Plaintiff's Motion is granted to the extent that it seeks a remand to
the Commissioner of Social Security ("Commissioner") for further
evaluation as set forth below. Accordingly, this matter is hereby
remanded to the Commissioner for further evaluation under sentence four
of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

On April 7, 2008, Plaintiff Robert R. Warnick, Sr., filed his
claim for Supplemental Security Income ("SSI") under Title XVI of the
Social Security Act, 42 U.S.C. §§ 1381-1383f.  Specifically, Plaintiff

1

claimed that he became disabled on August 1, 2007, due to "back problems." (R. 86-92, 109).

After being denied initially on June 12, 2008, Plaintiff submitted a request for a hearing before an Administrative Law Judge ("ALJ"), and obtained a hearing on February 12, 2010. In a decision dated February 17, 2010, the ALJ denied Plaintiff's request for benefits. (R. 9-17). The Appeals Council declined to review the ALJ's decision on October 25, 2010. (R. 1-3). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427

(3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

3

If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further

4

analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 7, 2008, the date he applied for SSI. (R. 11). At Step Two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of chronic back pain secondary to facet arthropathy, depression, and posttraumatic stress disorder. (R. 11). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 11-12).

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined by 20 CFR 416.967(a), but modified to allow a sit/stand option at intervals of one half hour. Further, the ALJ limited Plaintiff to the performance of simple, repetitive activities that would not require dealing with the general public. (R. 12-15). Based on this RFC determination, the ALJ found that Plaintiff was incapable of performing any past relevant work; therefore, the ALJ moved on to Step Five. (R. 15-16). The ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. Relying on the testimony of the VE, the ALJ concluded that Plaintiff would be capable of performing jobs that exist in significant numbers in the national economy, including ticket checker, document preparer, and surveillance system monitor. (R. 16). Accordingly, the ALJ found that Plaintiff was not disabled under the terms of the Act. (R. 17).

**IV.  Legal Analysis**

Plaintiff raises several arguments as to why the ALJ erred in finding that he was not disabled.   While the Court does not fully agree with all of the arguments set forth by Plaintiff, it does agree that substantial evidence does not support the ALJ's decision.   Specifically, the Court finds that certain potentially relevant factual errors and omissions by the ALJ relating to Plaintiff's medical records necessitate remand for further consideration.

Here, the ALJ made several errors in his findings and presumably relied on his erroneous findings in ultimately concluding that Plaintiff was not disabled.   For example, in concluding that Plaintiff's medical records evidenced no neurological abnormality, the ALJ found that there was no evidence of muscle spasm in the paralumbar vertebral muscles. (R. 13).   However, the evidence of record clearly contains reference to "mild muscle spasm in the paralumbar vertebral."   (R. 200).   While the presence of such muscle spasms does not in and of itself demonstrate disability, the ALJ specifically relied on the lack of such evidence in formulating the RFC and hypothetical question to the VE.   It is not possible for the Court to determine what the ALJ would have done differently, if anything, had he been aware of the error in his findings on this point.

Similarly, the ALJ, while finding that a certain form completed by Dr. Le, one of Plaintiff's treating sources, was inconsistent with the underlying treatment records, posited that the records contained no finding of sciatica.   (R. 14).   However, the medical records do mention that Plaintiff suffered from sciatica.   (R. 203).   Again, this may or

6

may not have been relevant in the ALJ's findings, but given that he specifically relied on this error, the Court must assume that it was at least of some relevance.

Moreover, the ALJ's decision contains no discussion of or reference to Plaintiff's numerous Global Assessment of Functioning ("GAF") scores. There is no question that the law regarding the impact of GAF scores is a bit ambiguous, compare Irizarry v. Barnhart, 233 Fed. Appx. 189, 192 (3d Cir. 2007) with Gilroy v. Astrue, 351 Fed. Appx. 714 (3d Cir. 2009), as these scores do not directly correlate to a determination as to whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009).

Indeed, a GAF score between 41 and 50 reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

7

shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." A GAF score between 31 and 40 reflects "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) **OR** major impairment in several areas, such as work or school, family relations, judgment, thinking, **or** mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000). Accordingly, the mere fact that a treating mental health care provider assigned certain GAF scores would not necessarily indicate that Plaintiff is disabled.

Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations, in setting forth the claimant's RFC, and in fashioning a hypothetical question to the VE. See Irizarry, 233 Fed. Appx. at 192. Here, numerous GAF scores of 50, and one of 40, were assigned to Plaintiff by treating professionals. (R. 159, 209, 211, 213, 215, 217, 251). The ALJ does not discuss these scores at all. While the scores may well have made no difference in the ALJ's findings, the failure to discuss the impact, if any, provides another ground for remanding the case.

It is unclear whether any of the problems cited above would

8

individually warrant remand.[1]  However, taken together, these errors and omissions demonstrate that further explanation is needed and that the Court cannot find that substantial evidence supports the ALJ's decision. The Court expresses no opinion as to whether the decision *could* be supported by the record.  It is the need for further explanation that mandates the remand in this case.[2]

## V.  **Conclusion**

In summary, the record does not permit the Court to determine whether substantial evidence supports the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

---

[1]    It should further be noted that the ALJ refers to Dr. Le as Dr. Bishop.  (R. 14).  While this appears to be a typographical error, it lends further confusion on the ALJ's decision.

[2]    Of course, on remand, the ALJ should be conscious of the other issues raised by Plaintiff in his brief.